**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHAD L. GEE,**

        **Plaintiff,**

  v.                                **Civil Action 2:19-cv-5009
Judge Michael H. Watson
Magistrate Judge Jolson**

**COMMISIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Chad L. Gee, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**     **BACKGROUND**

Plaintiff filed his applications for DIB and SSI on October 6, 2008, alleging that he was disabled beginning February 6, 2008. (Doc. 9, Tr. 167–77). This is the third time that Plaintiff's applications have been before this Court. (*See*, Tr. 634–36, 1528–33). Following multiple hearings, administrative decisions and Appeal Council denials, Plaintiff once again appeared and testified before an Administrative Law Judge ("ALJ") at a hearing held on June 13, 2019. (Tr. 1470–89). On July 15, 2019, the ALJ issued a decision denying Plaintiff's applications. (Tr. 1434–69). Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court.

Plaintiff filed the instant case seeking a review of the Commissioner's decision on November 13, 2019 (Doc. 1), and the Commissioner filed the administrative record on February 3, 2020 (Doc. 9). This matter is now ripe for consideration. (*See* Docs. 12, 14).

### A. Relevant Medical History and Hearing Testimony

Because Plaintiff's statement of errors pertains to only his mental impairments, the Undersigned will limit the discussion of the medical record and the hearing testimony to the same.

#### 1. *Medical History*

Analyzing Plaintiff's mental impairments, the ALJ usefully summarized the relevant treatment records:

> Turning to the claimant's mental impairments, which are also affected by his pain disorder, there is no real care documented in the record until 2010, despite testimony that he started to experience symptoms after his injury. The claimant did attend a consultative psychological evaluation in November 2008 wherein he stated that he had applied for disability because of his pain (Exhibit 1F). The claimant indicated the stopped school in the 11th grade and was a slow learner. He further noted that he felt depressed due to an inability to do what he did previously and that he did not like being around people. During the evaluation, the claimant demonstrated adequate memory and recall and was noted to be a good historian who appeared to give an appropriate sequence of events. Despite reporting depressive symptoms and agitation, he was noted to be cooperative with direct eye contact, his pace and flow of conversation was appropriate and he did not appear to have any receptive or expressive problems, though he appeared "very defeated and discouraged" and exhibited a constricted affect. Quality of his consciousness and level of responsiveness was appropriate. His memory/recall-attention span was adequate, and his immediate recall and long-term memory were functional, and his intellectual functioning was estimated to be in the borderline range. At the time, his insight appeared inadequate and his judgement appeared flawed. The evaluator diagnosed a depressive disorder, anxiety disorder, not otherwise specified (NOS) and a pain disorder. In April 2010, the claimant went to Six County Counseling, stating that he felt depressed and had started withdrawing from others. The evaluator diagnosed the claimant with depressive disorder, NOS (Exhibit 22F/2–8). The claimant attended counseling sessions in May and June 2010 noting that he was trying to engage in activities he wanted to enjoy (Exhibit 22F/10, 12).
>
> There is a break in counseling until 2012, when he saw Sherry Coulter, LPC. In October 2012, the claimant stated that he felt his depression remained the same, as when he first came (Exhibit 26F/3). The claimant went to Barbara Roth, M.D. in October 2012 for medication management. The claimant stated that he had some

mood swings and wanted his medication increased (Exhibit 26F/14). In November and December 2012, the claimant indicated to Ms. Coulter that he did not feel any better but he could control his anger better (Exhibit 26F/4–5).

In January 2013, during a medication management appointment, the claimant stated that his anxiety was at 0/10 and his depression at 5/10. He indicated that he felt more irritable but otherwise had fair relief of his symptoms and he was noted to exhibit a dysphoric mood but appeared cooperative, thus his medication was adjusted with good reported result at the next appointment and improved mental status examination indicated (Exhibit 26F/8, 15–19). This generally appeared to be the trend in the following appointments in February, March, May and June 2013 (Exhibit 26F). Though in June 2013, the claimant also complained of some mood swings, and the claimant demonstrated poor eye contact, but normal attention and concentration and his prescription remained the same (Exhibit 16F/31–37). In August and October 2013, he reported reduced depression over the last couple of months (Exhibit 26F/12–13). In October 2013, his medication was adjusted, though he was otherwise found he was doing well with normal concentration (Exhibit 26F/40–48). The claimant continued to received treatment in 2014 noting that he felt his depression continued to decrease down to 2-3/10, and it was noted the claimant was doing well with his symptoms under control (Exhibits 31F, 37F; 38F). In February 2015, the claimant reported doing well and he was noted to exhibit logical thoughts and normal concentration (Exhibit 37F/25–32). In July and October 2015, while he was noted to display a flat affect, he had an otherwise normal mental status examination (Exhibit 39F/1–19). In January 2016, the claimant stated that he felt better on medication and was not explosive (Exhibit 39F/20–29). In March 2016, he participated in a consultative psychological evaluation wherein he reported getting along well with others but he had some issues with concentration and irritability (Exhibit 35F). During the evaluation, the claimant appeared sad but was cooperative with fair eye contact and appeared to be a responsible informant. He exhibited a minimal range of emotion, and reported anxiety had not been much of a problem, despite reporting that he feared being in crowds. The evaluator diagnosed the claimant with adjustment disorder and felt he functioned in the borderline range. The claimant's school records showed that he had below average scores in October 1985 on the Otis-Lennon test (Exhibit 4F). The claimant has continued to receive medication management services through Allwell Behavioral Health (formerly Six County Inc.) (Exhibits 58F; 83F). He is treated routinely and conservatively with medication management appointments, lasting on average 10 minutes, typically occurring every one to three months. His medications are adjusted as needed and he appears to receive benefit, as shown by self-report and mental status examinations, which at times will show a flat affect, sad presentation and/or blunted affect, but otherwise unremarkable.

(Tr. 1447–48).

### 2. *Relevant Hearing Testimony*

The ALJ summarized "forms submitted to the Administration" and the testimony from Plaintiff's hearing:

> Despite the claimant testifying that at times he will "go off" on people who come up to him, he cannot be around a lot of people and his anxiety manifests as being "nervous and rambunctious," the medical evidence shows that the claimant typically had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments, with an occasional note of displaying a flat affect (*see, e.g.*, Exhibits 65F/29; 74F/10, 14; 82F/14). At the most recent hearing, he denied seeing or visiting with others on a regular basis, but for his girlfriend, mother and aunt. The claimant testified that his attention and concentration is "not really great," for example he is not really able to follow television shows.

(Tr. 1442).

> As for the claimant's mental health, he indicated that he suffered from explosions and felt unhappy. The claimant described trouble concentrating even on television shows. The claimant previously testified that he left the house only two or three times a week (*see also* Exhibit 2E).

> At the most recent hearing, the claimant testified . . . He continues to follow with his mental health provider and take his psychotropic medication as prescribed . . .

(Tr. 1444).

### B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through March 31, 2013, and had not engaged in substantial gainful employment since February 6, 2008, the alleged onset date. (Tr. 1440). The ALJ determined that Plaintiff suffers from the following severe impairments: lumbar degenerative disc disease; pain disorder; diabetes mellitus; chronic kidney disease; sleep apnea; high blood pressure; morbid obesity; affective disorders; and borderline intellectual functioning (BIF). (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 1441). The ALJ considered whether his impairments met Listings 12.04 (depressive, bipolar and related disorders),

4

12.07 (somatic symptom and related disorders) and 12.11 (neurodevelopmental disorders). (Tr. 1442). The ALJ discussed each of the paragraph B criteria, determining that Plaintiff had no more than moderate limitations in all categories. (*Id.*). The ALJ next considered whether the paragraph C criteria were met and determined that they were not. (Tr. 1443).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday; never crouch, crawl or climb ladders, ropes or scaffolds; can spend no more than 10 percent of the workday climbing stairs; able to understand, remember and carry out simple repetitive tasks; able to respond appropriately to supervisors and coworkers in a task oriented setting with only occasional public contact and occasional interaction with coworkers and able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

(*Id.*).

As for the relevant opinion evidence, the ALJ first considered the opinion of consultative psychological examiner, Lee Roach Ph.D., who opined in November 2008, that Plaintiff could not perform simple, repetitive tasks at the time and that he was "markedly" limited in his ability to respond to job pressure. (Tr. 1450–51). The ALJ afforded Dr. Roach's opinion "little weight," explaining that it is both internally inconsistent and "inconsistent with the record." (Tr. 1451). Next, the ALJ considered the opinion of consultative psychological examiner, Floyd Sours, who opined that Plaintiff has a "mild" limitation in his ability to attend and concentrate and that he could maintain appropriate behavior in work settings, as he interacted appropriately at the exam. (*Id.*). The ALJ gave "some weight" to the opinion of Mr. Sours, finding it "somewhat consistent with the record" and that the limitations are "consistent with" the RFC's mental health limitations. (*Id.*).

5

Finally, the ALJ considered the opinion of the state agency psychological consultants, who opined, in part, that Plaintiff could handle 3 to 4 step tasks and concentrate for two-hour periods. (Tr. 1452). The ALJ afforded "some weight" to their opinions, finding them "somewhat consistent" with the record and that the opined limitations were generally accommodated by the RFC's mental health limitations. (*Id.*).

Relying on a vocational expert's ("VE") testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a factory laborer and sandwich maker but could perform jobs that exist in significant numbers in the national economy, such as a document preparer, addresser/address clerk, or surveillance system monitor. (Tr. 1453–54). The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 6, 2008, through the date of the decision. (Tr. 1454).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff asserts that the ALJ erred in two ways. First, he argues that the ALJ failed to properly consider or account for his difficulties in maintaining concentration, persistence, and pace. (Doc. 12 at 10–13). Next, Plaintiff argues that the ALJ failed to properly evaluate the opinion of consultative examiner Dr. Roach. (*Id.* at 14–18). The Undersigned considers each argument in turn.

#### A. Mental Health Limitations

Plaintiff argues that the RFC does not accommodate his moderate difficulty in maintaining concentration, persistence, and pace. (Doc. 12 at 10–13). Specifically, he relies on an opinion from state agency psychologist, Cynthia Waggoner, who opined that Plaintiff can carry out 3 and 4 step tasks, concentrate for two-hour periods, and make simple decisions. (Tr. 374). Dr. Waggoner further found that "[t]here is not convincing evidence that [Plaintiff] would be unable to sustain mod[erate] paced work in a stable work setting" and that "[h]e can relate superficially with a few familiar others and make simple decisions as needed." (*Id.*).

In October 2018, following the parties' joint stipulation to remand (Tr. 1531), the Appeals Council focused on Dr. Waggoner's opinion. It explained:

> The [previous] hearing decision gave some weight to Dr. Waggoner's opinion but did not adequately explain how the residual functional capacity accommodated the limitation to concentrate for two-hour periods. Further consideration of the claimant's mental residual functional capacity is warranted. *Specifically, the Administrative Law Judge should weight [sic] the state agency reviewing psychologists' opinions and provide specific rationale concerning the concentration limitation.*

(Tr. 1536) (emphasis added).

In his written decision, the ALJ concluded that Plaintiff has "no more than a moderate limitation" in his ability to concentrate, persist, or maintain pace. (Tr. 1442). And, in considering

the opinion of Dr. Waggoner, the ALJ afforded her opinion "some weight." (Tr. 1452). Based on her opinion and other supporting evidence in the record, the ALJ limited Plaintiff to simple, repetitive tasks to accommodate Plaintiff's issues concentrating and diminished ability to handle detailed tasks due to his Borderline Intellectual Functioning. (*Id.*). The ALJ further limited Plaintiff to work with no fast or assembly line or strict production quotas because of increased symptoms of adjustment disorder in stressful situations. (*Id.*). As for the specific "two-hour periods" limitation, the ALJ noted that it "is deemed accounted for by standard work breaks and lunch breaks, and consequently is not explicitly delineated in the residual functional capacity assessed above." (*Id.*).

Plaintiff challenges the ALJ's analysis, asserting that is based on only an "assumption" regarding standard breaks every two hours, and moreover, that the ALJ's hypothetical question posed to the VE and ultimate RFC omit Dr. Waggoner's two-hour concentration limitation. (Doc. 12 at 12–13). Accordingly, Plaintiff's challenge is twofold in that it challenges the ALJ's alleged failure to accommodate Plaintiff's moderate limitation in his ability to concentrate, persist, and maintain pace, and moreover, challenges the mental health hypothetical the ALJ posed to the VE.

### 1. *Ability to Concentrate, Persist, or Maintain Pace*

In arguing that the ALJ failed to accommodate his moderate limitation in his ability to concentrate, persist, and maintain pace, Plaintiff focuses on Dr. Waggoner's opinion that Plaintiff can focus for two hours in a stable work setting. (Doc. 12 at 10–13). Up front, the Undersigned notes that she reads Dr. Waggoner's opinion in this regard differently than Plaintiff, and perhaps the Appeals Council. Specifically, the Undersigned does not interpret Dr. Waggoner's description of Plaintiff's abilities so narrowly. As noted, Dr. Waggoner opined, in relevant part, that Plaintiff can "concentrate for 2 hour periods," "make simple decisions" and found "[t]here is not convincing

8

evidence that [Plaintiff] would be unable to sustain mod[erate] paced work in a stable work setting." (Tr. 374). Accordingly, it is not clear that Dr. Waggoner opined that an explicit limitation to two-hour increments, in addition to the other mental health limitations, is necessary to accommodate Plaintiff's moderate difficulties in in maintaining concentration, persistence, and pace.

Regardless, any alleged failure to include a two-hour concentration limitation does not constitute reversible error. As Defendant notes, "breaks every two hours are to be expected in most jobs." *Mallott v. Colvin*, No. CIV.A. 5:13-305-DCR, 2014 WL 2574520, at *8 (E.D. Ky. June 9, 2014) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing SSR 96-9p, 61 Fed. Reg. 3448 (July 12, 1996))) ("Because the breaks that were recommended by [medical sources] are assumed in most jobs, any omission on the part of the ALJ . . . is harmless.").

More importantly, while Plaintiff seems to argue that the ALJ's RFC deviates from his conclusion that Plaintiff is moderately limited in his ability to maintain concentration, persistence, and pace, the Undersigned finds that the ALJ's RFC generally accommodates those challenges. Under SSR 96-8p, an ALJ's finding, at step three of the sequential evaluation, that a Plaintiff has a moderate limitation in his ability to concentrate, persist, or maintain pace, need not be reflected in the RFC. *Cala v. Colvin*, No. 3:14-CV-01060, 2016 WL 270303, at *17 (M.D. Tenn. Jan. 21, 2016). Rather, "an ALJ must be consistent in [his] findings." *Id*. Here, the ALJ's step three finding that Plaintiff is moderately limited in his ability to sustain concentration, persistence, and pace is consistent with his RFC that Plaintiff can carry out simple, repetitive tasks in a task-oriented setting, adapt to only simple changes, and work without strict production quotas. (Tr. 1443).

At base, it is the ALJ, not a medical source, who ultimately determines a claimant's RFC. 42 U.S.C. § 423(d)(5)(B). This is because "[a]n RFC determination is a legal decision rather than

9

a medical one, and the development of a claimant's RFC is solely within the province of an ALJ." 20 C.F.R. § 404.1527(3). And, contrary to Plaintiff's argument, the ALJ complied with the Appeals Council's direction, considered and weighed Dr. Waggoner's opinion, and expressly considered the limitation that Plaintiff work in two-hour time periods. Notably, Plaintiff does not cite any authority or explain why the current RFC limiting him to understanding, remembering, and carrying out simple repetitive tasks, working in a task-oriented setting with only occasional public contact and occasional interaction with coworkers, adapting to only simple changes, and working without strict production quotas, is incompatible with sustaining attention for two hours at a time. Rather, Plaintiff appears to argue that, under the remand order, the ALJ was required to expressly adopt a two-hour concentration limitation. That is not what the remand order required. Rather, the ALJ, in accordance with the remand's order and relevant regulations, tailored Plaintiff's RFC to accommodate Plaintiff's moderate limitations in sustaining concentration, persistence, and pace. Plaintiff has shown no reversible error as a result.

### 2. *ALJ's Hypothetical*

Plaintiff also argues that the ALJ's "hypothetical question . . . posed to the vocational witness did not include Dr. Waggoner's limitation to 2-hour periods of concentration," and "[m]oreover, the vocational witness was never asked about 'standard breaks.'" (Doc. 12 at 13). So, says Plaintiff, substantial evidence does not support the ALJ's reliance on the VE's testimony that Plaintiff can perform other work in the national economy. (*Id.*).

For support, Plaintiff relies on *Ealy v. Commissioner of Social Security*, in which the Sixth Circuit found that a VE's testimony that the plaintiff could work in a number of unskilled jobs did not constitute substantial evidence for the ALJ's conclusion because the hypothetical posed to the VE inadequately described the plaintiff's symptoms. 594 F.3d 504, 517 (6th Cir. 2010). Relevant

10

here, the state psychological consultant in *Ealy* limited the plaintiff's ability to focus on a simple, repetitive task to two-hour segments in an eight-hour workday where speed was not critical. *Id*. at 516. As in this case, the ALJ, on the basis of the consultant's opinion, and other record evidence, concluded that the plaintiff had "moderate difficulties" with concentration, persistence, and pace. *Id*. at 510. Despite this finding, the ALJ asked the VE, in relevant part, to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In assessing the hearing testimony, the Court concluded that the ALJ accepted the assessment of the consultant but then "streamlined" the hypothetical to omit "these speed-and pace-based restrictions completely" such that the hypothetical question did not accurately portray the plaintiff's mental impairment. *Id*. at 516–17.

But that is not what happened here. Rather, the ALJ posed a hypothetical individual who could, in relevant part, not only understand, remember, and carry out simple, repetitive tasks, but also respond appropriately to supervisors and coworkers in a setting with only occasional public contact and occasional interaction with coworkers, adapt to simple changes, and work in a setting without strict production quotas. (Tr. 1485). The VE testified that such an individual could not return to Plaintiff's past employment. (*Id*.).

Contrary to the ALJ's flawed hypothetical in *Ealy*, the ALJ's hypothetical in this case, while not word-for-word identical to Dr. Waggoner's opinion, "directly reflect[s] [Plaintiff's] moderate difficulties with concentration, persistence, and pace." *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 249 (6th Cir. 2016) (citing *Ealy*, 594 F.3d at 516–17); *see also Nolan v. Comm'r of Soc. Sec.*, No. 2:12-CV-0477, 2013 WL 1787386, at *7 (S.D. Ohio Apr. 25, 2013), *report and recommendation adopted*, No. 2:12-CV-00477, 2013 WL 4831029 (S.D. Ohio Sept. 10, 2013)

11

("While it is true that a hypothetical question that omits speed-and pace-based restrictions completely may be fatally flawed, that is not what happened here.").

Importantly, Dr. Waggoner's reference to "two-hour segment[s]" is a "'speed and pace-based restriction[].'" *Hanson v. Comm'r of Soc. Sec.*, No. 2:14-CV-561, 2015 WL 1637451, at *5 (S.D. Ohio Apr. 13, 2015), *report and recommendation adopted*, No. 2:14-CV-561, 2015 WL 2085558 (S.D. Ohio May 5, 2015) (quoting *Ealy*, 594 F.3d at 516). But unlike the ALJ in *Ealy*, the ALJ here posed other speed and pace-based restrictions to the VE, including that Plaintiff can adapt to only simple changes and work in a setting without strict production quotas. (Tr. 1485). "Consequently, it is simply not accurate to say that there is a clear variance between the limitations described in [Dr. Waggoner's] findings and the restrictions which were incorporated into the ALJ's residual functional capacity finding (and the hypothetical question posed to [the VE])." *Hanson*, 2015 WL 1637451, at *5 (holding that ALJ's RFC and hypothetical questions limiting plaintiff to only simple changes "recogniz[ed] that frequent or complex changes in the work environment would challenge someone who had difficulty maintaining attention and concentration").

Said differently, "the *Ealy* decision does not stand for the proposition that an RFC determination must include specific limitations regarding concentration, persistence, or pace whenever the ALJ finds such limitations in such areas . . . Rather, *Ealy* simply reiterates the long-held notion that if an ALJ relies on the response to a hypothetical question, such question (and by extension his RFC determination) must accurately portray the claimant's limitations and be consistent with the ALJ's express findings." *Singleton v. Comm'r of Soc. Sec.*, No. 1:11-CV-1351, 2013 WL 967602, at *7 (W.D. Mich. Mar. 12, 2013). The ALJ complied with that requirement here.

As explained, the ALJ "accurately portray[ed] [Plaintiff's] limitations . . . consistent with the ALJ's express findings." *Id.* Plaintiff has, therefore, set forth no reversible error. *Cf. Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.2d 842, 847 (E.D. Mich. 2007) (holding that ALJ's hypothetical question was inadequate where it limited plaintiff to simple, repetitive work when the plaintiff had moderate deficiencies in her ability to maintain concentration, persistence, and pace, but did so because no speed-or pace-based restrictions, such as an inability to meet quotas were included in the question); *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698, 702 (E.D. Mich. 2003) (holding that a limitation to unskilled, low-stress jobs, which did not address pace was insufficient to accommodate plaintiff's difficulties in maintaining concentration, persistence, or pace).

Because the ALJ's hypothetical adequately represented Plaintiff's difficulties in maintaining concentration, persistence, and pace, the ALJ did not err.

### B. Dr. Roach's Opinion

Next, Plaintiff argues that the ALJ erred in affording "little weight" to the opinion of one-time consultative examiner, Dr. Lee Roach. (Doc. 12 at 14–18). In November 2008, Dr. Roach opined that Plaintiff was "moderately impaired" in his ability to understand and execute simple instructions; maintain appropriate attention and concentration; relate to fellow workers and supervisors; and deal with the public and "markedly" impaired in his ability to respond to day-to-day work stress and job pressures. (Tr. 267).

Because Dr. Roach was only a one-time examining physician, the ALJ was not obligated to provide good reasons for discounting his opinion. *Myers v. Comm'r of Soc. Sec.*, No. 2:19-CV-2060, 2019 WL 7046408, at \*6 (S.D. Ohio Dec. 23, 2019), *report and recommendation adopted*, No. 2:19-CV-2060, 2020 WL 880778 (S.D. Ohio Feb. 21, 2020). Rather, the ALJ was required to

...

provide "a meaningful explanation regarding the weight given to particular medical source opinions." *Id*. The ALJ did so here.

The ALJ set forth two reasons for discounting Dr. Roach's opinion. (Tr. 1451). First, the ALJ found his opinion "inconsistent with the record." (*Id*.). The ALJ noted, for example, that Plaintiff "did not have any specific complaints of depression or treatment at that time." (*Id*.). The ALJ continued, that "[w]hen [Plaintiff] did start obtaining treatment, he noted relief of his symptoms with medication and counseling" and that the "record shows . . . that he had an ability to deal with stresses such as lack of housing." (*Id*. (collecting records)). Similarly, the ALJ noted that Plaintiff's "providers found . . . that he had normal attention and concentration." (*Id*. (collecting records)). In addition to finding Dr. Roach's opinion inconsistent with the record, the ALJ also found it "inconsistent with his own findings." (*Id*.). For example, the ALJ noted that at the exam with Dr. Roach, Plaintiff had "adequate memory and recall along with a global assessment of functioning ("GAF") score of 55, which at the time suggested moderate symptoms." (*Id*.). Along the same lines, the ALJ noted that "Dr. Roach indicated" that Plaintiff was "responsive" and "had no indication of any thought disorder." (*Id*.).

Plaintiff challenges the ALJ's analysis. For support, he relies on the opinion of Plaintiff's treating physician Dr. Jeffrey Haggenjos, as well as the opinion of state psychological examiner Floyd Sours, both of whom suggested greater mental health limitations than those the ALJ adopted. (Doc. 12 at 17–18). Plaintiff's argument misses the mark. First off, the ALJ relied on dozens of records showing that Plaintiff can deal with stress and has normal attention and concentration. (Tr. 1451 (collecting records)). Moreover, while Mr. Sours may have suggested other limitations not adopted by the ALJ, he found that Plaintiff retains the ability to maintain appropriate work behavior under work pressure, (Tr. 1135), which is inconsistent with Dr. Roach's opinion that

14

Plaintiff has a "marked" impairment in his ability to tolerate workplace stress, (Tr. 267). Dr. Haggenjos' opinion does not help Plaintiff, either, because the ALJ thoroughly described why the record does not support his extreme opinions. (Tr. 1451). Plaintiff further argues that the ALJ erred in relying on Plaintiff's lack of treatment because, at the time, he had no insurance or medical card. (Doc. 12 at 17). But, as the Commissioner notes, the record is unclear on that point, as Plaintiff testified that he had a medical card since the alleged onset date. (*See* Tr. 1477–78). *Accord Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987) (noting that it is the ALJ's "function to resolve conflicts in the evidence").

Plaintiff also challenges the ALJ's finding that Dr. Roach's opinion is internally inconsistent. He asserts that a GAF score of 55 is "not inconsistent with the mostly moderate findings opined by Dr. Roach." (Doc. 12 at 16). But, as the Commissioner notes, it is inconsistent with Dr. Roach's finding of a "marked" impairment. (Tr. 267). Additionally, Plaintiff argues that "just because Dr. Roach indicated that [Plaintiff] did not have problems with his memory does not mean that the rest of the numerous issues mentioned by Dr. Roach have suddenly disappeared." (Doc. 12 at 16–17). But the ALJ was within his discretion to cite an example of inconsistency without referring to all of them. Indeed, as the ALJ notes, Dr. Roach observed Plaintiff's "thinking [] to be free of any formal thought disorder" and that Plaintiff's short-term and long-term memory were functional (Tr. 264), which, as the ALJ noted, seems to be inconsistent with Dr. Roach's opinion that Plaintiff cannot perform even simple, repetitive tasks, (Tr. 267).

At bottom, the relevant question is whether substantial evidence supports the ALJ's conclusion. "Even if it is true that the record contains some evidence that may support Plaintiff's argument, the ALJ's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Bryan v. Comm'r of Soc. Sec.*, No. 2:18-CV-554,

2019 WL 2021156, at *7 (S.D. Ohio May 8, 2019*), report and recommendation adopted sub nom. Bryan v. Comm'r of Soc. Sec.*, No. 2:18-CV-554, 2019 WL 2912089 (S.D. Ohio July 8, 2019) (quotation marks and citation omitted). "Rather, it is the ALJ's function to resolve conflicts in the evidence, and that is exactly what the ALJ did here." *Id*. (quotation marks and citation omitted).

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 12) be **OVERRULED** and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: July 15, 2020						/s/ Kimberly A. Jolson
								KIMBERLY A. JOLSON
								UNITED STATES MAGISTRATE JUDGE